**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

JIMI ROSE and                           :
CONCIATA ROSE,                          :
                                        :          CIVIL ACTION NO. **1:CV-14-0420**
                                        :
                  Plaintiffs            :          (Judge Kane)
                                        :
           v.                           :          (Magistrate Judge Blewitt)
                                        :
                                        :
ADAMS COUNTY, PA, *et al.*,             :
                                        :
                                        :
                  Defendants            :

**REPORT AND RECOMMENDATION**

**I.    Background.**

On March 6, 2014, Plaintiffs, Jimi Rose (a/k/a James E. Rose, Jr.) and seemingly his minor

daughter, Conciata Rose, residents of Allentown, Pennsylvania, filed, *pro se*, the instant civil rights

action pursuant to 42 U.S.C. §1981, § 1983, §1985 and §1986.  (Doc. 1).  Plaintiffs also raise state

law claims.  Further, Plaintiffs filed an *In Forma Pauperis* Motion.  (Doc. 2).  Only Plaintiff Jimi Rose

signed the Complaint and the *In Forma Pauperis* Motion.  As such, we shall refer to Jimi Rose herein

as "Plaintiff."  We also note that while Conciata Rose is Jimi Rose's minor daughter, Jimi Rose does

not state that he has a legal right to file this action on behalf of Conciata.  In fact, Plaintiff Jimi Rose

indicates in his Complaint that Defendant Jessica McLaughlin, Conciata's mother, has legal custody

of Conciata.  In his Complaint, Jimi Rose is essentially challenging, as racially discriminatory, the

state court decisions granting Jessica McLaughlin custody of Conciata and denying him visitation.

Plaintiffs Jimi Rose with Conciata Rose filed a previous similar action with this Court.  *See Rose v. Roberts*, Civil No. 11-0323, M.D. Pa.  As the Court stated in Plaintiffs' prior case, "Plaintiff's Complaint centers around a custody dispute in which the Plaintiff [Jimi Rose] is involved with respect to the minor Plaintiff [Conciata Rose].  The essence of the Complaint is that he and his minor daughter have been discriminated against by the Defendants based upon their race."  *See Rose v. Roberts*, Civil No. 11-0323, M.D. Pa., Doc. 8, p. 1, 3-17-11 R&R, adopted, in large part, by the Court.  On June 10, 2011, this Court entered an Order dismissing the Rose's Complaint and closed their case.  *See Rose v. Roberts*, Civil No. 11-0323, M.D. Pa., Doc. 13, 6-10-11 Order.

This Court has jurisdiction over the instant action based on 28 U.S.C. § 1331 and §1341(a). Plaintiff seeks the Court to exercise its supplemental jurisdiction over his state law claims under 28 U.S.C. §1367.

Plaintiff names the following Defendants: Adams County, Pennsylvania; Adams County Children and Youth [Services]; Jessica McLaughlin;  Mark McLaughlin;  Barbara Buchanan; and John 'Pappy' Buchanan.  (Doc. 1, p. 1).   Plaintiff states that Jessica McLaughlin and  Mark McLaughlin are "Drug Dealers," and John 'Pappy' Buchanan is a "child molester" whose unlawful and perverted acts toward his daughter are "covered up by the Adams County Children and Youth."  The four individual Defendants are not alleged to be state actors.  Plaintiff indicates that Defendant Jessica McLaughlin is the mother of his minor daughter Conciata and has legal custody of his daughter. Defendant Mark McLaughlin appears to be the husband of Jessica McLaughlin. Plaintiff states  that  the Adams County Court and the York County Court have only allowed his daughter to be in the company of  Jessica McLaughlin, Mark McLaughlin, Barbara Buchanan and

John 'Pappy' Buchanan.  (*Id.*, p. 4).

## II.      Allegations of Complaint.

Plaintiff's Complaint is a lengthy 11-page, single spaced, typed document with no numbered paragraphs.   The paragraphs in Plaintiff's Complaint contain long, scandalous and confusing narratives which allege, in part, that Defendant Adams County Children and Youth Office along with York County Judges and Adams County Judges implemented and carried out "the practice of white supremacy [and] white racism."  Plaintiff also alleges that the McLaughlin Defendants "made a slave out of [his] minor daughter" and in conjunction with Defendant Barbara Buchanan have "turned [his daughter into a 'House Nigger,' aka 'Slave.'" Plaintiff avers that some of the Defendants belong to the Ku Klux Klan, that Defendants have treated his daughter as a "slave" and, that Defendants have conspired and aided and abetted each other to isolate his daughter "from having contact with black people or the outside world." Plaintiff essentially challenges  the Court Orders of the Adams County Court and the York County Court which have awarded Jessica McLaughlin legal custody of his minor daughter and have denied him visitation.  Plaintiff alleges that "[t]hese court orders do nothing but disguise racism and slavery in the year 2014." It appears that Plaintiff was not given custody of his minor daughter by the Adams County Court and the York County Court and that he was denied visitation of his daughter. Plaintiff alleges that the Court Orders do not permit his daughter "to have any contact or association with her 'Black Family' and only allow his daughter to have contact with "slave owners Barbara Buchanan, John 'Pappy' Buchanan, Jessica McLaughlin and Mark McLaughlin, as well as a cult-like Christian church that helps Defendants poison, if not kill the thoughts and individuality of a young Black child who is held in human

bondage for the sole purpose of being a 'House Nigger.'"   (Doc. 1, pp. 1-3).

Plaintiff insists that Defendants Jessica McLaughlin,  Mark McLaughlin,  Barbara Buchanan and John 'Pappy' Buchanan should be "arrested immediately for what they are doing to an innocent 'Black Child.'"   Plaintiff avers that  the Adams County Court and the York County Court "are composed of white racist judges who do no more than cover up the brutal illegal acts of slavery" and that they fail to ensure that black children remain in contact with their "Black Family." Plaintiff avers that the state Courts have awarded custody of his daughter to her mother, namely, Defendant Jessica McLaughlin, and that his daughter has been "a slave in her own mother's home and has been a slave for 14 years."  As stated, Defendant Mark McLaughlin appears to be the husband of Defendant Jessica McLaughlin.   Plaintiff alleges that the Adams County Court and the Defendant Adams County Children and Youth have aided Defendant Jessica McLaughlin in keeping his daughter in  isolation and are "responsible  for  covering  up  the  acts  of  slavery  and  child molestation."  Plaintiff also avers that  the Adams County Court and the York County Court "have absolute knowledge of these atrocities and have done nothing to prevent [his daughter] from being used as a 'Black Slave'" and from being kept in "Human Bondage."   (*Id.*, pp. 3-4).

Plaintiff alleges that the Adams County Court and the York County Court have permitted "Slavery," and through the Orders of these Courts, slavery is "conducted and carried out." Plaintiff states that the Adams County Court and the York County Court have also covered up that protected the identities of "the slave owners Barbara Buchanan, Jessica McLaughlin and  Mark McLaughlin. Plaintiff indicates that through the Orders of the Adams County Court and the York County Court, they have allowed his daughter "to be a prisoner in her mother's home" and that "they have

continued to hide and cover up and protect white racist violations of every civil right known to mankind."   Additionally, Plaintiff avers that the Judges of the York County Court "are racist and white supremacist and act in concert with their racist white supremacist  Court of Adams County (sic)."  In fact, Plaintiff indicates that York Count Judge Renn, who was a Defendant in Plaintiff 's prior case filed with this federal Court, was the Judge who suspended his parental rights to his daughter. (*Id.*, pp. 4-5).

The remaining pages of Complaint contain similar scurrilous allegations in which Plaintiff essentially claims that the  Adams County Court and the York County Court have issued Orders illegally suspending his visitation and parental rights and, prevented his right to communicate with his daughter because they are "white racist" judges "who hate black people" and who  have allowed Jessica McLaughlin to imprison his daughter at her home and "make her a slave."  Plaintiff also basically avers that the Judges of the Adams County Court and the York County Court have knowing allowed his daughter to be in the custody of Mark McLaughlin, an alleged drug abuser, and  John "Pappy" Buchanan, an alleged child molester.    (*Id.*, pp. 6-11).

As relief in his Complaint, Plaintiff seeks "judgment against the Defendants in excess of $5,000,000 per Defendant for nominal and punitive damages."   (*Id.*, p. 11).

As discussed below, we find that all of Plaintiff's constitutional claims in his Complaint should be dismissed with prejudice.[1]

---

[1] The undersigned has been assigned this case for all pre-trial matters pursuant to 28 U.S.C. § 636(b)(1)(A).

5

### III.     Screening Plaintiff's Complaint.

As stated, Plaintiff filed a Motion to proceed *in forma pauperis*. (Doc. 2).   We will recommend that the Court grant  Plaintiff's Motion to proceed *in forma pauperis*. (Doc. 2).  We now screen Plaintiff's  pleading as we are obliged to do.  *See Dunbar v. Dunbar*, Civil No. 11-0135, M.D. Pa.  On February 11, 2011, the Court in *Dunbar* issued an Order and granted Plaintiff's *in forma pauperis* motion  (Doc. 3, *Dunbar*).   The *Dunbar* Court then stated:

> The proper procedure after a district court grants *in forma pauperis* status is to file the complaint and then "screen it" before service pursuant to 28 U.S.C. § 1915(e)(2)(B).  Fisher v. Miller, 373 Fed. App'x 148, 148 (3d Cir.  2010) (citing Oates v. Sobolevitch, 914 F.2d 428, 429 n.1 (3d Cir.  1990)).  'The District Court may dismiss the complaint if, *inter alia*, it fails to state a claim upon which relief can be granted."  See 28 U.S.C. § 1915(e)(2)(B)(ii); Fisher, Fed App'x at 148.  If the Court finds that the Complaint fails to state a claim upon which relief can be granted, the Court must grant Plaintiff leave to amend the Complaint unless "amendment would be inequitable or futile."  Grayson v. May view State Hosp., 293 F.3d 103, 106 (3d Cir.  2002) (citing Shane v. Fauver, 213 F.3d 113, 116-17 (3d Circ. 2000)); see also Fisher, 373 Fed. App'x at 149-50.

(Doc. 3, pp. 1-2, *Dunbar*).

Thus, we are obliged to screen Plaintiff's Complaint  under 28 U.S.C. §1915(e).  Despite the fact that Plaintiff is not an inmate and he is not complaining about prison conditions, § 1915(e)(2) applies to all *in forma pauperis* complaints, and not just to prisoners.  *See Grayson v. Mayview State Hosp*., 293 F3d 103, 110, n. 10 (3d Cir. 2002); *Lopez v. Smith*, 203 F. 3d 1122, 1129 (9th Cir. 2000); *Williams v. Marino,* Civil No. 03-0632, M.D. Pa. January 12, 2004, Memorandum and Order, p. 4; *Palencar v. Cobler Realty Advisors*, Civil No. 09-0325, M.D. Pa., 7-24-09 slip op. pp. 5-6.

The Court uses the same standard to screen a complaint as it does for a 12(b)(6) motion to dismiss.  *See O'Connell v. Sobina*, 2008 WL 144199, *3 (W.D. Pa.); *Matthews v. Villella*, 2009 WL 311177, *2 (M.D. Pa.).

## IV.   Motion to Dismiss Standard.

In *Reisinger v. Luzerne County*, 712 F.Supp. 2d 332, 343-344,  (M.D. Pa. 2010), the Court stated:

> The Third Circuit Court of Appeals recently set out the appropriate standard applicable to a motion to dismiss in light of the United States Supreme Court's decisions *Bell Atlantic Corp. v. Twombly,* 550 U.S. 433 (2007), and *Ashcroft v. Iqbal,* --- U.S. ----, 129 S.Ct. 1937 (2009).  "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to 'state a claim that relief is plausible on its face.' " *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 570). The Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id*. at 1950. Moreover, it continued, "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. (citation omitted). *McTernan v. City of York,* 577 F.3d 521, 530 (3d Cir.2009). The Circuit Court discussed the effects of *Twombly* and *Iqbal* in detail and provided a road map for district courts presented with a motion to dismiss for failure to state a claim in a case filed just a week before *McTernan, Fowler v. UPMC Shadyside,* 578 F.3d 203 (3d Cir.2009).

> [D]istrict courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [ *Iqbal,* 129 S.Ct. at 1949.] Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id*. at 1950. In other words, a complaint must do more than allege a plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Philips [v. Co. of Allegheny],* 515 F.3d [224,] 234-35 [ (3d Cir.2008) ]. As the Supreme Court instructed in *Iqbal,* "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.' " *Iqbal,* 129 S.Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

*Fowler,* 578 F.3d at 210-11.

The Circuit Court's guidance makes clear that legal conclusions are not entitled to the same deference as well-pled facts. In other words, "the court is 'not bound to accept as true a legal conclusion couched as a factual allegation.' " *Guirguis v. Movers Specialty Services, Inc.,* No. 09-1104, 2009 WL 3041992, at *2 (3d Cir. Sept. 24, 2009) ( *quoting Twombly,* 550 U.S. at 555) (not precedential).

## V.   Section 1983 Standard.

In a § 1983 civil rights action, the Plaintiff must prove the following two essential elements: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct complained of deprived the Plaintiff of rights, privileges or immunities secured by the law or the Constitution of the United States. *Parratt v. Taylor*, 451 U.S. 527 (1981); *Kost v. Kozakiewicz*, 1 F. 3d 176, 184 (3d Cir. 1993). Further, Section 1983 is not a source of substantive rights.  Rather, it is a means to redress violations of federal law by state actors. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).  *See also Holocheck v. Luzerne County Head Start, Inc.*, 385 F. Supp. 2d 491, 498-499 (M. D. Pa. 2005); *Slater v. Susquehanna County*, 613 F. Supp. 2d 653, 660 (M.D. Pa. 2009) (citations omitted); *Stankowski v. Farley*, 487 F. Supp. 2d 543, 550 (M.D. Pa. 2007) ("only those who act under color of state law are liable to suit under section 1983.").

"In order to satisfy the second prong [of a §1983 civil rights action], a Defendant does not have to be a state official, but can also be held liable as a state actor." *Slater v. Susquehanna County*, 613 F. Supp. 2d at 660(citations omitted).

It is well established that personal liability under section 1983 cannot be imposed upon a state official based on a theory of *respondeat superior*.  *See, e.g., Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976); *Parratt,*

*supra*.  It is also well settled in the Third Circuit that personal involvement of defendants in alleged

constitutional deprivations is a requirement in a § 1983 case and that a complaint must allege such

personal involvement.  *Id.*  Each named defendant must be shown, through the complaint's

allegations, to have been personally involved in the events or occurrences upon which Plaintiff's

claims are based.  *Id.*  As the Court stated in *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir.

1998):

> A defendant in a civil rights action must have personal involvement
> in the alleged wrongs . . . . [P]ersonal involvement can be shown
> through allegations of personal direction or of actual knowledge and
> acquiescence.  Allegations of participation or actual knowledge
> and acquiescence, however, must be made with appropriate
> particularity. (Citations omitted).

A civil rights complaint must state time, place, and responsible persons.  *Id.*  Courts have also

held that an allegation seeking to impose liability on a defendant based on supervisory status,

without more, will not subject the official to section 1983 liability. *See Rode,* 845 F.2d at 1208.

## VI.   **Discussion.**

Initially, insofar as Plaintiff seeks this Court to have the four individual Defendants arrested

and criminally prosecuted for their alleged unlawful conduct, we find that this request should be

dismissed with prejudice.  Thus, to the extent that Plaintiff is deemed as asking this Court to file

federal criminal charges and initiate criminal prosecution against  the four individual Defendants,

this Court cannot grant as relief in the present case the initiation of federal  criminal prosecution.

The Third Circuit has held that a private person could not impose criminal liability on a defendant

because he lacked standing to do so.  *See Conception v. Resnik*, 2005 WL 1791699, *2, 143 Fed.

Appx. 422, 425-26 (3d Cir. 2005) (Non-Precedential).  This Court has no authority to grant Plaintiff

9

relief with respect to alleged criminal conduct in this action.   *See Matthews v. Villella*, 2009 WL 311177, *2 (M.D. Pa.) aff'd. in relevant part, C.A. No. 09-1486 (3d Cir. 5-21-10); *Banks v. U.S. Attorney*, 2008 WL 3853307, *2.   Therefore, insofar as Plaintiff is deemed as seeking this Court to arrest, prosecute and punish Defendants for their alleged unconstitutional and criminal behavior, this request should be dismissed with prejudice.   *See Ross v. Pennsylvania Bd. of Probation and Parole*, 2012 WL 3560819, *5 n. 3 (M.D. Pa August 16, 2012).

To the extent that Plaintiff is seeking punitive damages against the municipal Defendants, Adams County Children and Youth Services and Adams County, we shall recommend that this request for relief be dismissed with prejudice. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S. Ct. 2748 (1981).   Based on *City of Newport,* we find that it would be futile for the Court to allow Plaintiff to amend his punitive damages claim against the two municipal Defendants

Moreover, since Plaintiff names Adams County and Adams County Children and Youth Services as Defendants (collectively referred to as "Adams County Defendants"), the standards annunciated in *Monell v. Department of Social Servs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), apply. We find that Plaintiff has not stated a claim against Adams County Defendants under *Monell*.   We also find that to the extent Plaintiff names Adams County Children and Youth Services, an agency of Defendant Adams County and part of the County government itself, the only proper Defendant is Adams County. *See Duffy v. Bucks County*, 7 F.Supp.2d 569 (E.D. Pa. 1998); *Debellis v. Kulp*, 166 F.Supp.2d 255, 264 (E.D. Pa. 2001); *Dennis v. Evans*, 2011 WL 900911 (M.D. Pa. 2011).

Plaintiff 's Complaint fails to state a constitutional claim against Defendant Adams County under *Monell*.   Although difficult to follow, Plaintiff's Complaint appears to be attempting to premise Adams County's liability on the Orders of the Adams County Court which have awarded Jessica McLaughlin legal custody of Conciata and have denied him visitation. Defendant Adams County is a municipality, and thus cannot be held liable, either for its conduct or for the conduct of employees in agencies within the county controls, such as the Adams County Children and Youth Services, pursuant to *respondeat superior*.   *Brickell v. Clinton County Prison Bd.*, 658 F.Supp. 2d 621, 626-27 (M.D. Pa. 2009).   In order for Plaintiff to successfully allege a constitutional claim under §1983 against Defendant Adams  County, he must raise a *Monell* claim alleging that the County is a governmental entity and thus a "person" under §1983 and, alleging that either a policy or lack of policy of Adams  County led to the violation of the Plaintiff's constitutional rights.  *See Monell v. New York Dept. of Social Servs.*, *supra*; *see also Kokinda v. Breiner*, 557 F. Supp. 2d 581, 587 (M.D. Pa. 2008).

In *Kokinda,* 557 F. Supp. 2d at 587, the Court stated:

> Under *Monell*, "municipalities and other local government units are among those "persons" to whom Section 1983 applies." *Malles v. Lehigh County*, 639 F. Supp. 2d 566, 576 (E.D. Pa. 2009).  As the Court in *Malles v. Lehigh County*, 639 F. Supp. 2d at 576, stated:
> According to the teaching of *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L. Ed. 2d 611 (1978), Lehigh County "can be sued directly under  §1983 ... [when] the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation or decision officially adopted and promulgated by [Lehigh County's] officers" or where the constitutional deprivations occurred pursuant to governmental custom.  *Monell*, 436 U.S. at 690.

11

Therefore, in order to properly state a §1983 claim against Adams County, Plaintiff must not only allege that it qualifies as a governmental entity and thus is a person under §1983 standards, but Plaintiff must also must allege that Adams County unconstitutionally implemented or executed a policy statement, ordinance, regulation, decision or custom leading to the stated violations of his constitutional rights. Based on *Kokinda* and *Malles*, we find Plaintiff's allegations do not sufficiently state that Defendant Adams County caused any alleged constitutional violation by having customs, policies, practices and procedures, and how these policies gave rise to the violation of his constitutional rights. Furthermore, as discussed below, we find that Plaintiff's challenge of the Orders of the Adams County Court regarding the custody of Conciata is barred by the *Rooker Feldman* doctrine.

Also, we find that Plaintiff's municipal liability claim against Defendant Adams County under *Monell* fails since Plaintiff failed to state a cognizable constitutional claim against any individual Defendant employed by the County. *See Deninno v. Municipality of Penn Hills*, 269 Fed.Appx. 153, 158 (3d Cir. 2008)("Even more fundamentally, there can be no municipal liability here because we have determined that none of the individual Defendants violated the Constitution."). We will recommend, therefore, that Defendants Adams County and Adams County Children and Youth Services be dismissed with prejudice from this case. Since the Plaintiff has failed to state a cognizable constitutional claim against any individual Defendant employed by Adams County, we find futility in allowing him to amend his Complaint as to the Adams County Defendants.

We find that insofar as Plaintiff asserts claims under the Thirteen Amendment and alleges that Defendants have made his minor daughter Conciata a "slave," we find that such claims should be dismissed with prejudice.

In *Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 540 (3d Cir.2012), the Third Circuit stated:

> "[T]he phrase 'involuntary servitude' was intended ... 'to cover those forms of compulsory labor akin to African slavery[.]' " *United States v. Kozminski,* 487 U.S. 931, 942, 108 S.Ct. 2751, 101 L.Ed.2d 788 (1988) (quoting *Butler v. Perry,* 240 U.S. 328, 332, 36 S.Ct. 258, 60 L.Ed. 672 (1916)). "Modern day examples of involuntary servitude have been limited to labor camps, isolated religious sects, or forced confinement." *Steirer v. Bethlehem Area Sch. Dist.,* 987 F.2d 989, 999 (3d Cir.1993); *see, e.g., United States v. King,* 840 F.2d 1276, 1280 (6th Cir.1988) (religious sect violated 18 U.S.C. § 1584 where they "used and threatened to use physical force to make the children [at their camp] perform labor and the children believed they had no viable alternative but to perform such labor"); *United States v. Booker,* 655 F.2d 562, 563, 566 (4th Cir.1981) (migrant labor camp held farm workers in involuntary servitude, forbade them from leaving without paying their debts, and enforced the rule with threats of physical harm, actual physical injury, and by kidnapping and returning to the farm workers who attempted to leave); *Jobson v. Henne,* 355 F.2d 129, 131–32 (2d Cir.1966) (patients in mental institution performing required labor stated Thirteenth Amendment claim).

Plaintiff has alleged that Defendants Jessica and Mark McLaughlin have made his minor daughter a "slave" and have isolated her from the public and from himself and, that they have prevented her from having "any contact with any black people especially the Black child's own Black Family." Plaintiff states that Defendants have been able to make his daughter a "slave" through the "court orders of Adams and York County" and that these Court Orders "do nothing but disguise racism and slavery in the year 2014." (Doc. 1, p. 3).

Plaintiff does not "allege [Conciata was] held in a labor camp or forced into daily labor by a religious sect." *Id*. Additionally, insofar as Plaintiff alleges that the McLaughlin Defendants have not allowed Conciata to have contact with the public and with members of her own family and race, we find that these averments are not sufficient to constitute involuntary servitude. *Id*. As such, we find that all of Plaintiff's claims under the Thirteen Amendment and allegations that Defendants, through the Orders of York and Adams County Courts, have made his minor daughter Conciata a "slave," are also subject to being stricken from his Complaint under Fed.R.Civ.P. 12(f). *See Solomon v. School Dist. of Philadelphia*, 882 F.Supp.2d 766, 776-77 (E.D. Pa. 2012); *Gula v. Advanced Cargo Transp., Inc.*, 2013 WL 1899900, *4 (M.D. Pa. May 7, 2013).

Therefore, we will recommend that all of Plaintiff 's claims under the Thirteen Amendment and allegations that Defendants have made his minor daughter Conciata a "salve," be dismissed with prejudice. Based upon the above, we find futility in allowing Plaintiff to amend his Complaint with respect to said claims as against all Defendants. *See Zavala*, *supra*; *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002)(*pro se* Complaints should not be dismissed without leave to amend unless "amendment would be inequitable or futile").

While we recognize that since Plaintiff has filed a *pro se* Complaint, the Court is required to hold him to a less stringent standard. *See, eg, Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594 (1972). We also agree with Plaintiff (Doc. 1, p. 11) that leave to amend his Complaint should be freely given. However, even though *pro se* Plaintiffs are accorded substantial deference in federal court, *Haines v. Kerner*, s*upra*, *Hughes v. Rowe*, 449 U.S. 5 (1980), they are not free to ignore the Federal Rules of Civil Procedure and must properly state a claim. Additionally, we are

well aware Rule 15(a) mandates that leave to amend "shall be freely given when justice so requires," however, if the amendment would be futile, it should not be permitted. *See Forman v. Davis*, 371 U.S. 178, 182 (1982). The futility exception means that a complaint, as amended, would fail to state a claim upon which relief can be granted. *See Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). As stated, we find futility in allowing Plaintiff to amend his Complaint with respect to his claims under the Thirteen Amendment and allegations that Defendants have made his minor daughter Conciata a "slave."

Plaintiff names four individuals Defendants who are not state actors. Specifically, the following Defendants are not state actors: Jessica McLaughlin; Mark McLaughlin; Barbara Buchanan; and John 'Pappy' Buchanan. Since the stated four Defendants are not state actors, Plaintiff's constitutional claims against them under §1983 fail as a matter or law. Also, Plaintiffs' conclusory allegation that the stated Defendants have acted in concert with state officials, such as the Judges of Adams County Court and York County Court, are not sufficient.

In *Brookhart v. Rohr*, 385 Fed. Appx. 67, 69 (3d Cir. 2010), the Third Circuit Court stated that a complaint must contain:

> "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). "Factual allegations must be enough to raise a right to relief above the speculative level...." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955.

*See also Reisinger v. Luzerne County*, 2010 WL 1976821, *7 (M.D. Pa.), *Williams v. Hull*, 2009 WL 1586832, *2-*3 (W.D. Pa. 2009); *Hollingsworth v. Range Resources-Appalachia, LLC*, Civil No. 09-

0838, M.D. Pa., 10-28-09 Memorandum, slip op. pp. 4-5(Plaintiff must "describe 'enough facts to raise a reasonable expectation that discovery will reveal evidence of' each necessary elements of the claims alleged in the complaints.")(citations omitted); *Santiago v. Warminster Tp.*, 629 F.3d 121, 133 (3d Cir.  2010).

In *Santiago v. Warminster Twp.*, 629 F.3d 121, 133 (3d Cir. 2010), the Court stated that "'possibility' is no longer the touchstone for pleading sufficiency after *Twombly* and *Iqbal*. Plausibility is what matters.  Allegations that are 'merely consistent with a defendant's liability' or show the 'mere possibility of misconduct' are not enough. *Iqbal,* 129 S.Ct. at 1949–50 (internal quotation marks omitted)."

In *Brookhart*, the Third Circuit also stated:

> To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of a right secured by the Constitution or laws of the United States committed by a person acting under color of state law. *West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). Here, the majority of the defendants are private citizens and not state actors. Liability would attach if a private party conspired with a state actor, *Dennis v. Sparks,* 449 U.S. 24, 27-28, 101 S.Ct. 183, 66 L.Ed.2d 185, ... .

385 Fed. Appx. at 69.

Plaintiff alleges that Defendants Jessica McLaughlin, Mark McLaughlin,  Barbara Buchanan and  John Buchanan  violated his  constitutional rights by preventing his daughter Conciata from having any contact with him and with his family, and by keeping Conciata from contact with "any outside society." Plaintiff states that Jessica McLaughlin has been granted legal custody of Conciata and that the other three Defendants have been granted exclusive visitation rights with Conciata. Plaintiff states that these four Defendants have been granted these rights  by the Adams County and

York County Courts of Common Pleas.  The stated four Defendants are private persons.  As such, they are not  proper Defendants under § 1983.  *See Stankowski v. Farley, supra.*

Further, as mentioned, we find that Plaintiff's Complaint does not sufficiently allege that the four individual Defendants were acting under color of state law and were conspiring with state officials with respect to their alleged conduct.  Plaintiff's conclusory allegations that said Defendants were acting in concert with state officials (namely, County Court Judges)  clearly not sufficient under *Twombly* and *Iqbal*.

Thus, we will recommend that Plaintiff's Complaint be dismissed as against Defendants Jessica McLaughlin, Mark McLaughlin,  Barbara Buchanan and  John Buchanan to the extent it raises civil rights claims against them under §1983.  *See Keisling v. Renn*, 2011 WL 1632955, *1 (3d Cir. 5-2-11)(Third Circuit Court found that Plaintiff's Complaint against Defendants who filed the state court foreclosure action against him, National City Mortgage, PNC Bank as well as their attorneys, were not properly alleged to have acted under color of state law)(citing *Dennis v. Sparks*, 449 U.S. 24, 28 (1980)("merely resorting to the courts and being on the winning side of a lawsuit does not make a party a co-conspirator or a joint actor with the judge")).

Further, simply because  Defendant Jessica McLaughlin is Conciata's mother and Court appointed legal guardian of Conciata with sole custody of Conciata, does not qualify her as a state actor for purposes of §1983."  *Goodson v. Maggi*, 2011 WL 2533286, * 13 (W.D. Pa. 6-23-11)(citations omitted).

The Court in *Goodson v. Maggi*, 2011 WL 2533286, * 13, stated:

> Although § 1983 liability will not generally lie against a private party, liability may attach where the private party "is a willful participant in joint action with the

State or its agents." *Dennis v. Sparks,* 449 U.S. 24, 27, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980). Hence, private action may be converted into state action if a state actor conspires with a private individual to deprive a plaintiff of his constitutional rights. *Id.* at 27–29, 101 S.Ct. 183. The requisite state action may be found even if the state actor with whom the private individual allegedly conspired is himself immune from suit. *Id.* (action against private parties accused of conspiring with judge found to be state action under § 1983). The allegations of a complaint, however, must state a claim for conspiracy. *See id.* at 28, 101 S.Ct. 183.

In order to make out a claim for conspiracy pursuant to 42 U.S.C. § 1983, a plaintiff must allege conspiracy with particularity even though a heightened pleading standard generally does not apply to civil rights actions against individual defendants. *Bieros v. Nicola,* 860 F.Supp. 223, 225 (E.D.Pa.1994) (citing *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993)). "To plead conspiracy adequately, a plaintiff must set forth allegations that address the period of the conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose." *See, e.g., Shearin v. E.F. Hutton Group, Inc.,* 885 F.2d 1162, 1166 (3d Cir.1989), *abrogated on other grounds by Beck v. Prupis,* 529 U.S. 494, 120 S.Ct. 1608, 146 L.Ed.2d 561 (2000). Further, in light of *Twombly* and its progeny, there must be " 'enough factual matter (taken as true) to suggest that an agreement was made,' in other words, 'plausible grounds to infer an agreement.' " *Great Western Mining & Mineral Co.,* 615 F.3d 159, 178 (3d Cir.2010) (quoting *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955).

We find that Plaintiff has completely failed to allege a cognizable conspiracy claim with sufficient particularity as required under *Twombly*.  As detailed above, Plaintiff raises a vague conspiracy claim under §1983 in his Complaint.  Plaintiff avers that the state Courts have awarded custody of his daughter to her mother, namely, Defendant Jessica McLaughlin, and that the individual Defendants have made  his daughter "a slave in her own mother's home and has been a slave for 14 years."

The allegations of Plaintiff's Complaint are clearly insufficient to state any connection between the alleged conduct and Orders of the Judges of the County Courts and Defendants

Jessica McLaughlin, Mark McLaughlin, Barbara Buchanan and John Buchanan. Plaintiff has failed to "allege any facts that plausibly suggest a meeting of the minds" between Defendants Jessica McLaughlin, Mark McLaughlin, Barbara Buchanan and John Buchanan and the Judges of the County Courts to keep Conciata a "slave" in her mother's home. Plaintiff's "bald allegations of conspiracy are insufficient to state a claim upon which relief can be granted." *Id.*(citing *Mincy v. Klem*, 2009 WL 331432, *5 (M.D. Pa. 2-9-09)).

Therefore, we will recommend that Plaintiffs' §1983 conspiracy claims raised in his Complaint be dismissed as against all Defendants.

Thus, Defendants Jessica McLaughlin, Mark McLaughlin, Barbara Buchanan and John Buchanan can only be held liable in this case under § 1985(3) if they conspired with a state actor. *See Keisling v. Renn*, 2010 WL 3984876, *9 citing, in part, *Abbott v. Latshaw*, 164 F. 3d 141, 147-48 (3d Cir. 1998)("[A] private party who willfully participates in a joint conspiracy with state officials to deprive a person of a constitutional right acts 'under color of state law' for purposes of §1983."); *Goodson v. Maggi*, 2011 WL 2533286, * 14. As mentioned, Plaintiff attempts to raise claims under §1985.

As in *Brookhart*, which is on point with the present case, we do not find that Plaintiff has properly alleged Defendants Jessica McLaughlin, Mark McLaughlin, Barbara Buchanan and John Buchanan were part of a vast conspiracy, lasting 14 years, under §1985(3) with state actors (*i.e.*, "white racist" County Court Judges) to deprive him of his constitutional rights with respect to denying him custody and visitation of Conciata based on racial discrimination and a desire to make Conciata a "Black Slave" held in "Human Bondage."

The *Brookhart* Court stated:

> Section 1985(3) of title 42 requires a plaintiff to allege that invidious racial
> or otherwise class-based discriminatory animus lay behind the defendants' actions,
> and he must set forth facts from which a conspiratorial agreement between the
> defendants can be inferred. *See Bray v. Alexandria Women's Health Clinic,* 506 U.S.
> 263, 267-68, 113 S.Ct. 753, 122 L.Ed.2d 34 (1993). Brookhart did not allege that
> he was a member of a protected class, and his conclusory allegations of a deprivation
> of his constitutional rights are insufficient to state a section 1985(3) claim.

385 Fed. Appx. at 70.

In *Roach v. Marrow*, 2009 WL 3103781, *5 (M.D. Pa. 9-24-09), the Court stated:

> The requirements for establishing a cause of action under 42 U.S.C.
> § 1985(3) are set forth in a line of Supreme Court cases beginning with the
> decision in *Griffin v. Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d
> 338 (1971). There, the Supreme Court clarified that the reach of section 1985(3)
> is limited to private conspiracies predicated on "racial, or perhaps otherwise
> class based, invidiously discriminatory animus." *Id.* at 102, 91 S.Ct. at 1798.
> The Court strictly construed the requirement of class-based invidious
> animus in *United Brotherhood of Carpenters and Joiners of America, Local
> 610 v. Scott,* 436 U.S. 825, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983), finding
> that commercial and economic animus could not form the basis for a section
> 1985(3) claim. *Lake v. Arnold,* 112 F.3d 682, 685 (3d Cir.1997).
> Consistent with these decisions, a plaintiff must allege the following elements
> in order to state a claim pursuant to 42 U.S.C. § 1985(3):
>
> (1) a conspiracy; (2) motivated by a racial or class based discriminatory
> animus designed to deprive, directly or indirectly, any person or class of persons
> to the equal protection of the laws; (3) an act in furtherance of the conspiracy;
> and (4) an injury to person or property or the deprivation of any right or
> privilege of a citizen of the United States.

*Id.*

Thus, "it is not enough that a Plaintiff falls within a class entitled to sue under §1985(3).

Instead, the complaint must allege that Defendants have engaged in invidious discrimination against

the protected class and that the invidious discrimination has caused the Plaintiff injury." *Roach v.

Marrow*, 2009 WL 3103781, *6(citing *Majewski v. Luzerne County*, 2007 WL 1074769 (M.D. Pa.

20

4-9-07)); *Goodson v. Maggi*, 2010 WL 1006901, *6("[M]ere conclusory allegations of deprivations of constitutional rights are insufficient to state a §1985(3) claim.")(citation omitted).

Plaintiff states that he and Conciata fall within a class entitled to protection afforded by §1985(3).  However, as discussed, Plaintiff does not properly state that the alleged conspiracy involving the Adams and York County Court Judges and Defendants Jessica McLaughlin, Mark McLaughlin,  Barbara Buchanan and  John Buchanan to make Conciata a "slave" "was motivated by discriminatory animus against an identifiable class and that the discrimination against the identifiable class was invidious." *Farber v. City of Patterson*, 440 F. 3d 131, 135 (3d Cir. 2006). Further, as stated above, in *Keisling v. Renn*, 2011 WL 1632955, *1 (3d Cir. 5-2-11), the Third Circuit Court found that Plaintiff's Complaint against Defendants who filed the state court foreclosure action against him, were not properly alleged to have acted under color of state law, and the Court cited to *Dennis v. Sparks*, 449 U.S. 24, 28 (1980), and quoted *Dennis* by stating, "merely resorting to the courts and being on the winning side of a lawsuit does not make a party a co-conspirator or a joint actor with the judge."

Additionally, "mere conclusory allegations of deprivations of constitutional rights are insufficient to state a §1985(3) claim." *Goodson v. Maggi*, 2011 WL 2533286, * 14 quoting *D.R. by L.R. v. Middle Bucks Area Vocational Tech. Sch.*, 972 F.2d 1364, 1377 (3d cir. 1992).  As discussed, we find that Plaintiff has failed to allege any facts that show that Defendants Jessica McLaughlin, Mark McLaughlin,  Barbara Buchanan and  John Buchanan entered into any agreement with the County Court Judges to deprive him of his constitutional rights for 14 years, and that he has failed to allege any facts to indicate conduct taken as part of an agreement or plan.

21

Thus, we will recommend that all of Plaintiff's conspiracy claims under §1983 and §1985(3) against Defendants Jessica McLaughlin, Mark McLaughlin, Barbara Buchanan and John Buchanan be dismissed with prejudice. *See Brookhart, supra*.; *Killing v. Renn*, 2011 WL 1632955, *1 (3d Cir. 5-2-11). Based on the above, we find futility in allowing Plaintiff to amend his conspiracy claims under §1983 and §1985(3) claims against Defendants Jessica McLaughlin, Mark McLaughlin, Barbara Buchanan and John Buchanan.

Moreover, we find that insofar as Plaintiff's claims that Defendants Jessica McLaughlin, Mark McLaughlin, Barbara Buchanan and John Buchanan conspired with the Adams County Court and the York County Court, any claims against the County Courts are barred under the Eleventh Amendment. Adams County Court and York County Court fall under the Unified Judicial System of Pennsylvania pursuant to 42 Pa.C.S.A. §301(4). *See Dougherty v. Snyder*, 2011 WL 1871226, *13.

In *Van Tassel v. Lawrence County Domestic Relations Section*, 659 F.Supp. 2d 672, 694-695 (W.D. Pa. 2009), the Court stated:

> A state is deemed to be the real party in interest when a lawsuit is brought against an agency that is considered to be an "arm" of the state. See *Regents of Univ. Of Cal. v. Doe*, 519 U.S. 425, 430, 117 S.Ct. 900, 137 L.Ed.2d 55 (1997); *Benn*, 426 F.3d at 241. The United States Court of Appeals for the Third Circuit has recognized that "[t]he Commonwealth vests judicial power in a unified judicial system, and all courts and agencies of the [unified judicial system] are part of the Commonwealth government rather than local entities." *Haybarger*, 551 F.3d at 198 (3d Cir.2008) (citing *Benn*, 426 F.3d at 240-41 and Pa. Const. art. V, § 1). The Court of Appeals has also found that "Pennsylvania's judicial districts ... are entitled to Eleventh Amendment immunity." *Id*. Moreover, "all components of the judicial branch of the Pennsylvania government are state entities and thus are not persons for section 1983 purposes." *Callahan v. City of Philadelphia*, 207 F.3d 668, 674 (3d Cir.2000).

We find that insofar as Plaintiff raises constitutional claims against the Adams County Court and the York County Court, they are barred under the Eleventh Amendment. Plaintiff alleges that "York County officials[,] in particular the judges [,] are racist and white supremacist and act in concert with the racist white supremacist court of Adams County." (Doc. 1, p. 4). Based on *MCI Telecom. Corp. v. Bell Atl. Pa.*, 271 F.3d 491, 502 (3d Cir. 2001), because Adams County Court and the York County Court are agencies of the Commonwealth of Pennsylvania, this Court's jurisdiction over these state Court's is barred by the Eleventh Amendment of the United States Constitution, and all claims against these Courts are subject to dismissal.

In *Democracy Rising PA v. Celluci*, 603 F. Supp. 2d 780, 795 (M.D. Pa. 2009), this Court held that:

> The Eleventh Amendment precludes private federal litigation against a state and its agencies. n16 *Hans v. Louisiana*, 134 U.S. 1, 15-16, 10 S. Ct. 504, 33 L. Ed. 842 (1890); *see also Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 72-73, 120 S. Ct. 631, 145 L. Ed. 2d 522 (2000); *Lombardo v. Pennsylvania*, 540 F.3d 190, 194-95 (3d Cir. 2008). This is a jurisdictional bar subject to only two exceptions: (1) Congress may specifically abrogate a state's sovereign immunity by exercising its enforcement power under the Fourteenth Amendment, or (2) a state may waive its sovereign immunity by consenting to suit. *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670, 119 S. Ct. 2219, 144 L. Ed. 2d 605 (1999); *Koslow v. Pennsylvania*, 302 F.3d 161, 168 (3d Cir. 2002). It is well settled that Congress had no intention to abrogate the states' sovereign immunity by enacting § 1983. *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 66, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989). Furthermore, Pennsylvania has unequivocally withheld its consent to such suits. See 42 PA. CONS. STAT. § 8521(b); *see also Lombardo*, 540 F.3d at 196 n.3; *Laskaris v. Thornburgh*, 661 F.2d 23, 25 (3d Cir. 1981).

*See also Urella v. PA State Troopers Ass'n*, 2008 WL 1944069, *3.

Thus, we find that any constitutional claims Plaintiff raises against the Adams County Court and the York County Court are barred by the Eleventh Amendment and that they are not "persons" under §1983. *See Democracy Rising PA v. Celluci, supra; Beattie v. DOC SCI-Mahanoy, supra; Van Tassel v. Lawrence County Domestic Relations Section,* 659 F.Supp. 2d 672, 694-695 (W.D. Pa. 2009).

Finally, we find that Plaintiff's action raising constitutional claims which essentially challenge the decisions of the Adams County Court and the York County Court denying him custody and visitation to his daughter Conciata is entirely barred under the *Rooker-Feldman* doctrine.

In *Goodson v. Maggi*, 2011 WL 2533286, * 7, the Court stated:

> [The Third Circuit Court of Appeals has] established the following test, based on the Supreme Court's holding in *Exxon Mobil:*
> [T]here are four requirements that must be met for the *Rooker–Feldman* doctrine to apply: (1) the federal plaintiff lost in state court; (2) the plaintiff "complain[s] of injuries caused by [the] state-court judgments"; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments.
>
> *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir.2010) (quoting *Exxon Mobil,* 544 U.S. at 284, 125 S.Ct. 1517). Furthermore, in formulating the four-part test, the court of appeals determined that the phrase "inextricably intertwined" neither created an additional legal test nor expanded the scope of the doctrine beyond challenges to state-court judgments. *Id.* at 170. Rather, "[t]he purpose of the [phrase had been] to highlight that a challenge to a judgment is barred even if the claim forming the basis of the challenge was not raised in the state proceedings." *Id.* (alteration to original) (citing *Bolden v. City of Topeka, Kan.,* 441 F.3d 1129, 1141 (10th Cir.2006)). Hence, the court of appeals opined that the phrase is no more than "a descriptive label attached to claims that meet the requirements outlined in *Exxon Mobil.*" *Id.* at 170 (quoting *Hoblock v. Albany Cnty. Bd. of Elections,* 422 F.3d 77, 87 (2d Cir.2005)).
> The court of appeals in *Great Western* found that the key to determining whether *Rooker–Feldman* barred a claim lies within the second and fourth requirements of the four-part test. 615 F.3d at 166. Essentially, the second

requirement—plaintiff must complain of injuries caused by the state court judgment—is an inquiry into the source of the plaintiff's injury. *Id.* (citing *Turner v. Crawford Square Apartments III, L.P.,* 449 F.3d 542, 547 (3d Cir.2006)).

Plaintiff is basically challenging the State Court decisions with respect to the custody and visitation of his daughter Conciata. Plaintiff alleges that his constitutional rights were violated by the State Courts with respect to their decisions as to the custody and visitation of his daughter Conciata. Plaintiff states that the Orders of the State Court were unlawful and based on racial prejudice. We find that any judgment in this case in favor of Plaintiff would require this Court to essentially find that the decisions of the Adams County Court and the York County Court to grant Jessica McLaughlin custody of Conciata and to deny Plaintiff visitation rights were null and void, and would effectively overrule the Orders of these State Courts. The Adams County Court and York County Court decisions regarding the custody of Conciata would have to be rejected and overruled, and found to have been based on racial discrimination against Plaintiff, for Plaintiff to prevail on his requested relief.

Thus, we find that this Court lacks subject matter jurisdiction over all of Plaintiff's constitutional claims under the *Rooker-Feldman* doctrine. *See Wager v. York County Domestic Relations*, 2010 WL 231129 (M.D. Pa. 1-14-10); *Bonham v. Givens*, 197 Fed.Appx. 148, 150 (3d Cir. 2006)(citing *Exxon Mobil*, 544 U.S. at 284). In *McKnight v. Baker*, 244 Fed. Appx. 442 (3d Cir. 2007), the Third Circuit considered an appeal filed by Mr. McKnight arising from a custody dispute with the mother (Ms. Middleton) of their daughter. The Philadelphia County Family Court issued a custody and visitation order granting the mother primary custody over Plaintiff's and Ms. Middleton's daughter. The Family Court also suspended Plaintiff's visitation rights for failing to

abide by an order.  The District Court dismissed most of Plaintiff's claims pursuant to the *Rooker-Feldman* doctrine.  *See McKnight v. Baker*, 343 F. Supp. 2d 422 (E.D. Pa. 2004), affirmed, 244 Fed.Appx. 442 (3d Cir. 2007).

In *McKnight*, 244 Fed. Appx. at 444-45, the Third Circuit stated:

> With reference to the *Rooker-Feldman* doctrine, district courts do not have jurisdiction over cases brought by a "state-court loser [ ] complaining of injuries caused by [a] state-court judgment[ ] rendered before the district court proceedings commenced and inviting district court review and rejection of [that] judgment[ ]." *Exxon Mobil Corp.,* 544 U.S. at 284, 125 S.Ct. 1517. Despite McKnight's argument to the contrary, it is abundantly clear that the crux of his complaint is that Middleton and others conspired to have the Family Court suspend his visitation rights and have subsequently acted in accordance with that Family Court order. It is hard to imagine a case which more directly asks a district court to review the actions of a state court. In order for McKnight to prevail, the District Court would need to  conclude that the Family Court erred in its suspension of McKnight's visitation rights, or that the various defendants have violated his constitutional rights in adhering to the dictates of that order. The District Court does not have jurisdiction to so conclude. *See, e.g., Marran v. Marran*, 376 F.3d 143, 151-53 (3d Cir.2004); *GASH Assocs. v. Village of Rosemont,* 995 F.2d 726, 727-29 (7th Cir.1993) ("[C]arrying out a judicial decision does not independently violate the Constitution.").

As in *McKnight* and *Bonham*, we find that our Plaintiff is clearly seeking this District Court to review and overturn the decisions of the Adams County Court and the York County Court, as well as Adams County Youth and Children Services, regarding the decisions as to  the custody and visitation of his daughter Conciata.  We find that based on *Bonham, McKnight* and *Wager*, it is abundantly clear that this Court does not have jurisdiction over Plaintiff's instant action.  *See also Johnson v. DeGrandy,* 512 U.S. 997, 1005-1006 (1994)("[A] party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgement itself violates the loser's

federal rights."); *McFall v. Register of Wills for Bucks County, PA*, 352 F. Supp. 2d 544, 547 (E.D. Pa. 2004).

In *Wager v. York County Domestic Relations*, 2010 WL 231129, *5, the Court stated:

> It has been consistently recognized that the *Rooker-Feldman* doctrine prevents federal judges from considering civil rights lawsuits which seek to re-examine state domestic relations court rulings that are presented "by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced." *Kwasnik v. Leblon,* 228 F. App'x 238, 242 (3d Cir.2007). In such instances, the federal courts have typically deferred to the state court domestic relations decisions, and rebuffed efforts to use federal civil rights laws to review, or reverse, those state court rulings. *See, e.g., Marran v. Marran,* 376 F.3d 143 (3d. Cir.2004); *Kwasnik* 228 F. App'x 238, 242; *Smith v. Department of Human Services,* 198 F. App'x 227 (3d Cir.2006); *Rose v. County of York,* No. 05-5820, 2007 WL 136682 (E.D.Pa. Jan.12, 2007). These settled principles are directly applicable here and are fatal to Wager's claims. Granting even the most liberal reading to Wager's complaint, that complaint directly invites this Court to set aside decisions rendered in state court in a longstanding domestic relations case. Thus, Wager's complaint specifically invites us to do precisely that which we are forbidden under the *Rooker-Feldman* doctrine from doing: entertain a "case[ ] brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting [this] court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Industries Corp.,* 544 U.S. at 284. Therefore, this Court should decline Wager's invitation and dismiss this complaint for lack of jurisdiction.

*See also Van Tassel v. Lawrence County Domestic Relations Sections*, 390 Fed. Appx. 201 (3d Cir. 2010).

In *Gaynor v. Nelowet*, 2000 WL 427274, *1 (E.D. Pa. 4-19-00), the Court stated:

The *Rooker-Feldman* doctrine,FN13 under which federal district courts are not permitted to exercise judicial review over state court proceedings. "District courts lack subject matter jurisdiction once a state court has adjudicated an issue because Congress has conferred only original jurisdiction not appellate jurisdiction on the district courts." *Guarino v. Larsen,* 11 F.3d 1151, 1156-57 (3d Cir.1993); *see also Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 24,

107 S.Ct. 1519, 1533, 95 L.Ed.2d 1 (1987) (Marshall, J., concurring) ("It is a well-settled principle that federal appellate review of judgments rendered by state courts can only occur in this Court, on appeal or by writ of certiorari."). A federal proceeding is barred under the *Rooker-Feldman* doctrine "when entertaining the federal court claim would be the equivalent of an appellate review of [the state court] order." *FOCUS v. Allegheny County Court of Common Pleas,* 75 F.3d 834, 840 (3d Cir.1996). *Rooker-Feldman* applies to final state court judgments, *Port Authority Police Benevolent Ass'n v. Port Authority,* 973 F.2d 169, 177 (3d Cir.1992), including those of lower state courts. *Id.* ("[F]ederal district courts are certainly ... precluded from reviewing decisions of lower state courts, which are subject to correction and modification within the state court system.").

In the present case, we find that Plaintiff's constitutional claims are "inextricably intertwined" with issues adjudicated by the state courts since this Court would have to determine that the Adams County Court's and the York  County Court's decisions and orders regarding the custody and care of Conciata  were unlawful and erroneously entered in order to grant Plaintiff relief with respect to his instant claims.  We find that Plaintiff's constitutional claims are not independent of the merits of the Adams County Court's and the York County Court's decisions and orders.  Thus, we find that a decision with respect to Plaintiff's present federal claims by this Court requires a determination that the decisions and orders of the Adams County Court's and the  York County Court's were illegal and erroneous, and that a decision by this Court would render the Adams County Court's and the York County Court's decisions and orders as ineffectual.  Indeed, any relief to which Plaintiff may be entitled in this case with respect to his instant claims would be largely based on findings that the Adams County Court's and the York County Court's decisions and orders entered with respect to  the  custody and visitation of his daughter Conciata were issued in violation of his constitutional rights.  *See Gaynor, supra*; *Goodson, supra*.

The Adams County Court and the York County Court ruled against Plaintiff, and he was the losing party regarding the custody and visitation of his daughter Conciata. The County Courts also denied Plaintiff visitation of his daughter. We also find that the source of Plaintiff's alleged injures in this case is the state court decisions regarding the custody and visitation of his daughter Conciata for the past 14 years. Thus, we find that Plaintiff is essentially seeking, in part, reversal of the Adams County Court and the York County Court decisions and judgments. *See Goodson*, 2011 WL 2533286, *11; *Bonham*, *supra*. As in *Goodson* and *Bonham*, we find that our Plaintiff is, "in essence, seeking appellate review of the state court judgment, and therefore, [we find] that the source of Plaintiff['s] alleged injures as to these claims seeking equitable relief is the state court judgment issued in [Adams and York] Count[ies]." *Id*.

Thus, we will recommend that all of Plaintiff's constitutional claims raised in his Complaint be dismissed based on the *Rooker-Feldman* doctrine since the Court lacks subject matter jurisdiction to review these claims, which are inextricably intertwined with the Adams County Court's and the York County Court's decisions and orders. *See McKnight, supra; Roush v. Horner*, 2008 WL 189556, *5-*7 (W.D. Pa. 1-18-08); *Goodson, supra; Bonham, supra*.

Additionally, Plaintiff's remedy with respect to his challenge to the Adams County Court's and the York County Court's final orders regarding all matters pertaining to the the custody and visitation of his daughter Conciata, was to file appeals with the Pennsylvania appellate courts. *See McKnight v. Baker*, 343 F. Supp. 2d at 425(citing *Parkview Assoc. Partnership v. City of Lebanon*, 225 F.3d 321, 324 (3d Cir. 2000)); *Malik*, 2006 WL 3511686, *3.

Since we find that Plaintiff has not established a federal claim against any Defendant, we will recommend that the Court decline to exercise pendent jurisdiction over all of Plaintiff's state law

claims against Defendants.  *See Verdecchia v. Prozan*, 274 F.Supp.2d 712, 728 (W.D. Pa. 2003); *Grimm v. City of Uniontown*, 2008 WL 282344, *32 (W.D. Pa. 1-31-08).

Accordingly, we will recommend that Plaintiff's *in forma pauperis* Motion (Doc. 2) be granted, and that all of Plaintiff's claims in his Complaint (Doc. 1) against all Defendants be dismissed with prejudice.

## VIII.   Recommendation.

Based on the foregoing, it is respectfully recommended that Plaintiff's *in forma pauperis* Motion **(Doc. 2)** be granted solely for the purpose of filing this action, and that Plaintiff's Complaint **(Doc. 1)** as against all Defendants be dismissed with prejudice.[2]   It is further recommended that the Court close this case.

                              s/ Thomas M. Blewitt
                              **THOMAS M. BLEWITT**
                              **United States Magistrate Judge**

**Dated: March 11, 2014**

---

[2]Based on our discussion above, we do not recommend that Plaintiff be allowed to amend his pleading as to any Defendant since we find futility of any amendment.  *See Ashton v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004).

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

JIMI ROSE and                          :
CONCIATA ROSE,                         :
                                       :          CIVIL ACTION NO. **1:CV-14-0420**
                                       :
            Plaintiffs                 :          (Judge Kane)
                                       :
        v.                             :          (Magistrate Judge Blewitt)
                                       :
                                       :
ADAMS COUNTY, PA, *et al.*,            :
                                       :
                                       :
            Defendants                 :

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **March 11, 2014.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in
> 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
> disposition of a prisoner case or a habeas corpus petition within fourteen (14)
> days after being served with a copy thereof.  Such party shall file
> with the clerk of court, and serve on the magistrate judge and all
> parties, written objections which shall specifically identify the
> portions of the proposed findings, recommendations or report to which
> objection is made and the basis for such objections.  The briefing
> requirements set forth in Local Rule 72.2 shall apply.  A judge shall
> make a *de novo* determination of those portions of the report or
> specified proposed findings or recommendations to which objection
> is made and may accept, reject, or modify, in whole or in part, the findings
> or recommendations made by the magistrate judge.  The judge, however,
> need conduct a new hearing only in his or her discretion or where
> required by law, and may consider the record developed before the

magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Failure to file timely Objections to the foregoing Report and Recommendation may constitute a waiver of any appellate rights.

_____    **s/ Thomas M. Blewitt**
                                                            **THOMAS M. BLEWITT**
                                                            **United States Magistrate Judge**

**Dated:  March 11, 2014**